HERBERT C. BROMBERGER, Plaintiff, *v.* EMPIRE FLASHLIGHT CO., INC., Defendant.

Supreme Court, Bronx County, November 13, 1930.

*Saul Pulver*, for the plaintiff.

*L. Lloyd Brown*, for the defendant.

COLLINS, J. This action by the plaintiff subtenant against the defendant landlord is to recover damages for a constructive eviction, and seeks also the return of a deposit pledged with the defendant as security for the faithful performance of the terms of the written lease between them.

The complaint contains three causes of action. The first alleges the violation of the covenant of quiet enjoyment. The second rests upon the claimed breach of the defendant's covenant to provide the plaintiff with a suitable location for the plaintiff's card signboard at or near the entrance to the subleased premises, which breach, it is contended, resulted in the plaintiff's eviction, in that he was compelled to remove from the premises as a consequence of the defendant's refusal to provide the contracted for signboard space at the stipulated point. The third cause alleges that by virtue of the eviction, the plaintiff became entitled to the return of the $108.33 deposit. The answer, after substantially denying these allegations, sets up as a counterclaim rental of the premises for the month of July, 1925, amounting to $108.33.

The subleased premises were the front part of the second floor of a building on the west side of Sixth avenue near Forty-ninth street, New York city, in an employment agency section, and wherein the plaintiff operated an employment agency. The lease was for a period of two years, eight and one-half months from August 1, 1924, at a yearly rental of $1,300. In addition to the customary covenant of quiet enjoyment, conditioned upon the payment of the stipulated rent, the lease contained the following covenant:

" The landlord of the premises rented will permit the tenant to display, during business hours, a card signboard on the street level, at or near the entrance of the said leased premises, but said card signboard will be permitted only at such locations as may be designated by the landlord; the tenants, however, to be provided with a suitable location for said card signboard, at or near the entrance

of the said leased premises, at all times during the period covered by this lease."

Upon the card signboard which formed the subject of the above covenant, the plaintiff, from time to time, affixed cards indicating the positions which his agency had available. The conspicuous display of this signboard within reading sight of passers-by was important to the proper conduct of the plaintiff's business. The plaintiff displayed a sign on the second floor window facing the street, and also a hanging wooden sign which projected from the building over the entrance to the building. The defendant's intimation that these two signs were sufficient to satisfy the covenant loses sight of the explicit engagement that the plaintiff be " provided with a suitable location for the said card signboard," " on the street level," as well as of the requirement of the plaintiff's business. The sign on the second floor window and the hanging sign did not and could not satisfy this requirement, as they still left the plaintiff without the means of exposing to public view the positions which he had to offer. The entrance to the building was about four feet wide and was near the south end. A restaurant occupied the space between such entrance and the north end. The north and south walls were each about two feet wide. To the south wall was affixed the sign of another tenant, above which was a glass show case of the defendant. On the opposite side of the building entrance, adjacent to the entrance to the restaurant, was another glass-inclosed sign of the defendant. These signs were affixed at the time the plaintiff negotiated for the lease and when he took possession. He contracted and went into possession with knowledge of the situation. Obviously, there was no suitable or available space at or near the entrance for the plaintiff's card signboard, unless the defendant made available to the plaintiff the space then occupied by the glass-inclosed sign of the defendant above alluded to. Even then the plaintiff's card signboard would have projected out into the entrance, as it was wider than the narrow space to which it would have been affixed. By permission of the proprietor of the building adjoining to the south, the plaintiff's card signboard was placed there, where it remained until that building was demolished the latter part of April or the first part of May, 1925. After that there was some controversy as to where the card signboard was to be placed, and the plaintiff asserts that it was torn down. But it does not convincingly appear that this was done at defendant's instance or with its knowledge. In any event, it is conceded that the defendant was willing that the north wall be utilized, and it was located there for a while. This north wall was about twelve feet from the entrance to the building. It is not

seriously disputed that this north wall was at all times available and that the card signboard could have remained there. The plaintiff maintains, however, that this location was not " at or near the entrance." Around July 3, 1925, he removed from the premises. He now claims that the defendant neglected and refused to provide a space for the card signboard " at or near the entrance," and that such conduct constitutes a constructive eviction. During July, 1925, the premises were vacant, and no rent was received for that month. On August first the premises were taken over by another employment agency whose card signboard was affixed to the north wall. It may be that the north wall is not " at or near the entrance " within the contemplation of the covenant. The issue to be determined is whether the alleged non-compliance with the covenant amounts to a constructive eviction.

To constitute constructive eviction, " it is not necessary that there should be actual expulsion of the tenant from the premises. If the landlord commits or suffers acts to be committed which make it necessary for the tenant to remove, this is equivalent to expulsion. * * * It is not essential that the acts of the landlord should be committed with intent to compel the tenant to leave the property or to deprive him of the beneficial enjoyment thereof. If they are calculated to and do make it necessary for the tenant to move, they constitute an eviction. So a failure to perform the duty which the landlord owes to the tenant, and without the due performance of which the leasehold premises are not tenantable, would constitute an eviction." (*Tallman* v. *Murphy*, 120 N. Y. 345, 351.)

"An eviction may also be *total* or *partial*. It is total when the tenant is deprived of the whole of the premises demised, and it is partial when the tenant is deprived of a substantial part of the premises demised." (*Jackson* v. *Paterno*, 58 Misc. 201, 204; affd., 128 App. Div. 474; *Berlinger* v. *MacDonald*, 149 id. 5; *Huber* v. *Ryan*, 26 Misc. 428; *American Tract Society* v. *Jones*, 76 id. 236.)

However, every deprivation of the beneficial enjoyment of the property in whole or in part does not amount to constructive eviction. The deprivation must be " substantial and effectual." (*Lounsbery* v. *Snyder*, 31 N. Y. 514.) " Not every breach of covenant or wrongful act on the part of the landlord constitutes an eviction." (*Bookman* v. *Polachek*, 165 N. Y. Supp. 1023, 1024.)

Facts establishing either actual or constructive eviction are indispensable to a valid cause of action for damages for breach of covenant of quiet enjoyment. (*Matter of O'Donnell*, 240 N. Y. 99, 104; *Scriver* v. *Smith*, 100 id. 471, 477; *Grattan* v. *Tierney Sons, Inc.*, 226 App. Div. 811.)

" If there was generally a substantial performance, and no evi-

dence of an intent not to perform or of a continuous failure to perform, then omissions which are not in their nature both serious and persistent will not prevent a recovery" for rent. (*Humes* v. *Gardner,* 22 Misc. 333, 335.)

"An entry does not amount to an eviction, if the act, though wrongful, be in the nature of mere trespass, not interfering with the substantial enjoyment of the premises." (*Lounsbery* v. *Snyder, supra.*)

Whether there was a constructive eviction depends upon the materiality of the deprivation. (*Seaboard Realty Company* v. *Fuller,* 33 Misc. 109.)

Ordinarily the question is one of fact. (*Hayden Co.* v. *Kehoe,* 177 App. Div. 734.)

While I am satisfied from the facts here that the card signboard played an important role in the plaintiff's business, I am not convinced that its location on the north wall, instead of "at or near the entrance," was so substantial and material as to amount to an eviction from a part of the demised premises, authorizing removal from the whole.

Furthermore, the plaintiff claims only special damages in the form of loss of profits. It is well established that loss of profits cannot be made the basis of recovery unless they are ascertainable with a reasonable degree of certainty. The character of the evidence here concerning damage is so speculative as to forbid predicating an award thereon. According to the plaintiff's testimony his monthly receipts ran as high as $1,897.90. Yet he had no bank account, and his books were destroyed during the pendency of this action. Since it is not disputed that the plaintiff did not pay the July rent and that the premises were not rented to any one else during that period, the plaintiff is liable for $108.33 rent for that month. That sum the defendant already has as security. The plaintiff is not entitled to its return.

Verdict directed for the defendant. Counterclaim dismissed. Exception to plaintiff. Thirty days' stay. Sixty days to make case.